CHARLES S. BIRGE, ADMINISTRATOR, ·C. T. A., *vs.*
ABBIE A. NUCOMB ET ALS.

First Judicial District, Hartford, October Term, 1918.
PRENTICE, C. J., RORABACK, WHEELER, BEACH and GAGER, Js.

In the construction of wills, courts have no concern with an alleged intent
of the testator which finds no expression in the written instrument.

Obviously there is no testamentary gift if no money or other property
is designated as its subject-matter.

The uses to which a bequest in trust may be applied, if clearly ex-
pressed in the will, cannot be expanded by construction; and
therefore a trust fund which is to be used to pay the "last sickness
and funeral expenses" of the beneficiary cannot be applied to
other purposes.

A testatrix having declared her intention to dispose of her property,
both real and personal, after making several bequests directed
that the residue of her estate should be divided into three equal
parts, one of which she gave to her husband, to be to him and his
heirs forever. She then provided that the remaining two thirds
should be equally divided between her two brothers, Daniel and
John, "to be placed in savings bank *in trust* they to have the use
during their lifetime and if necessary a sufficient amount to pay
for their last sickness and funeral expenses the same to be to them
their heirs forever." *Held* that in view of the declared purpose of
the testatrix to make a complete disposition of her property, of
the absence of any direct gift in trust or the appointment of a
trustee to take the legal title or control of the property, and of
the presence of words appropriate and amply sufficient to pass
an estate in fee to the two brothers,—the clause would best be
construed as giving them an absolute title in fee, rather than life
estates with no disposition at all of the respective remainders or a
disposition which would vest such remainders in the heirs of the
respective brothers under the final words, "to be to them [and]
their heirs forever," thereby wresting a common and familiar phrase
from its accustomed meaning.

A direction in a will that property be divided equally between two or
more, imports a gift to them.

The use of the words "in trust" does not necessarily create a trust,
nor is it conclusive of the testator's intention so to do.

An absolute gift of all the income of property is a gift of the property
itself.

Submitted on briefs October 1st—decided December 17th, 1918.

SUIT to determine the construction of the will of Mary W. Bunnell, of Plymouth, deceased, brought to and reserved by the Superior Court in Litchfield County, *Reed, J.*, upon the allegations of the complaint, which were admitted to be true, for the advice of this court.

Mary W. Bunnell died December 12th, 1913, leaving an estate consisting wholly of personal property, and a will duly probated. The portions of this instrument concerning which advice is asked are confined to its second, fourth and seventh paragraphs. Emily W. Catlin, the beneficiary named in the second paragraph, was one of the testatrix's two sisters and died before the latter. This paragraph reads as follows:—

"*Second.* I give devise and bequeath to my sister Emily W. Catlin my clothing not otherwise disposed of the same to be to her and her heirs forever. I, also give to my said sister Emily *in trust* of Allison Bunnell to be placed in Savings Bank to be used for her care and comfort, as the said Bunnell may think necessary. Should any of the money remain after the decease of my sister Emily the remainder to be equally divided between my two brothers Daniel and John Woodruff the same to be to them and their heirs forever."

The third paragraph, concerning which no question is presented, was one in favor of the testatrix's other sister, Abbie A. Nucomb. It was similar in language and substance to the second paragraph, excepting that the amount of the gift was stated to be $500.

The fourth paragraph contains the gift of some enumerated articles to the testatrix's niece Carrie Robbins, followed by the following provision: "I also give to the said Carrie Robbins the sum of $200 *in trust* in money of Allison Bunnell to be placed in Savings Bank to be used as she may need it to pay her last sickness and funeral expenses,"

The fifth and sixth paragraphs contain gifts of certain personal belongings to nieces and a grandnephew, and nothing more.

The seventh is as follows: "I give and devise to my husband Allison Bunnell all of my Beds Bedding and Household Goods and Furniture in my house not otherwise disposed of in this will. I direct that the remainder of my estate be divided into three equal parts. One third part I give to my said husband Allison Bunnell to be to him and his heirs forever.

"The two remaining two thirds I direct to be equally divided between my two brothers Daniel and John Woodruff to be placed in Savings Bank *in trust* they to have the use during their lifetime and if necessary a sufficient amount to pay for their last sickness and funeral expenses the same to be to them their heirs forever."

These paragraphs include the only dispositive provisions of the instrument. They are preceded by the statement, at the beginning of the will, that the testatrix gives, devises and bequeaths her estate and property, real and personal, as follows.

The testatrix's brother John Woodruff died before her, leaving surviving him his widow Rachel and four children, to wit, Louise, Lily, Hamilton and Dudley, all still living. Emily Catlin likewise predeceased the testatrix leaving two daughters, who in turn died before the testatrix, leaving four children.

The plaintiff is the administrator, *c. t. a.*, of the will, and as such has in his hands about $12,000 ready for distribution.

The questions propounded to the Superior Court for advice are the four following:—

"(a) Whether there was any trust fund created by virtue of the provisions of the second section of said will, and if so, the amount thereof, and whether

that sum, if any, should be paid to Daniel Woodruff and the representatives of John Woodruff, deceased.

"(b) Whether any part of the two hundred dollar trust fund mentioned in the fourth section of said will can be used for the benefit of the said Carrie Robbins Slater for any other purpose than to pay for her last sickness and funeral expenses, and if so, for what purpose and in what amount?

"(c) Whether the remaining two-thirds mentioned in the seventh section of said will, to be divided between Daniel and John Woodruff, is a life estate or an estate in fee?

"(d) In the event of said trusts or bequests, or any of them, being adjudged to be inoperative or invalid, or to have failed, then to whom, in what proportion, and in what manner the same shall be paid and delivered and go and of right belong?"

*Samuel A. Herman,* for the plaintiff.

*H. Roger Jones,* for Abbie A. Nucomb and Daniel Woodruff.

*Wilbur G. Manchester,* for Rachel Woodruff and her four children.

*Frank B. Munn,* for Carrie Robbins Slater *et al.*

PRENTICE, C. J. The first question propounded must be answered in the negative. The testatrix having designated no amount of money or other property as the subject-matter of the gift, there was no gift. Whatever conjecture may be entertained as to what the testatrix either intended or would have desired to do, the will must be construed in accordance with what it says and not in accordance with what

the testatrix intended or would have wished to say. With unexpressed intent the courts are not concerned. *Wolfe* v. *Hatheway*, 81 Conn. 181, 185, 70 Atl. 645; *Comstock* v. *Comstock*, 78 Conn. 606, 612, 63 Atl. 449.

The second question must also receive a negative answer. The language of the fourth paragraph of the will is too clear and distinct in its definition of the beneficial use in favor of Carrie Robbins, to admit of either doubt as to its meaning, or expansion by construction so as to include other purposes than payment of her last sickness and funeral expenses.

The concluding sentence of paragraph seven is so inartificially and obscurely expressed that the answer to the third inquiry propounded is by no means free from difficulty. Several constructions have been suggested. One leads to intestacy as respects the bulk of the testatrix's estate after the termination of life estates to her brothers Daniel and John. The will is too strongly indicative of the testatrix's purpose and intent to make a complete disposition of her property, to admit of a construction leading to partial intestacy if the language of the instrument admits of a reasonable construction which will avoid that result. Looking to the language employed in that portion of the paragraph which occasions the inquiry, it will be seen that if the intermediate words "to be placed in Savings Bank *in trust* they to have the use during their lifetime and if necessary a sufficient amount to pay for their last sickness and funeral expenses," had been omitted therefrom, there would have been expressed in plain and unmistakable language an absolute gift of the two thirds to the two brothers in equal shares between them. It begins with a direction that it be equally divided between them. These words import a gift. *White* v. *Smith*, 87 Conn. 663, 667, 89 Atl. 272. The concluding words, "to them

their heirs forever," serve to emphasize the fact of gift and to clearly establish its quality as an absolute one.

It only remains to consider what significance is to be attached to the intermediate words above quoted, and whether or not their incorporation into the sentence amounts to a modification of the scope of its other language and a reduction of the *quantum* of title which, without them, would pass to the brothers.

First of all they are not sufficient to create a trust. There is neither a gift in trust, the appointment of a trustee, or other indication that the testatrix intended to vest the legal title in some other person than the brothers, or to commit the custody, care or control of the property to another for their benefit. The gift was in terms to them, and nobody else was given either title, interest or right of custody or control. The legal and equitable titles were thus united in them. The testatrix's use of the words *"in trust"* is by no means conclusive of her intention to create a trust, nor did it of necessity operate to create one. *Hemingway* v. *Hemingway*, 22 Conn. 462, 470.

Neither does the testatrix's phrase in any other way create rights or impose limitations whose effect is to detract from the absolute character of the gift to the brothers as otherwise expressed. No right or interest, present or prospective, in any person other than they, is recognized. No one is given a scintilla of anything arising out of or concerning the property.

Thus the intermediate language in question subtracts nothing from the brothers full beneficial enjoyment of the property set apart for them, and therefore cannot have the effect of cutting down the absolute estate which, without it, would be theirs beyond question. The fact that the testatrix directed that the money be placed in a savings bank with the right

in the donees to have the use of it during their lives, and if necessary a sufficient amount to pay for their last sickness and funeral expenses, does not militate against this conclusion. *Hemingway* v. *Hemingway*, 22 Conn. 462, 470; *Fairfax* v. *Brown*, 60 Md. 50, 57; *Curry* v. *Patterson*, 183 Pa. St. 238, 240, 38 Atl. 594. Notwithstanding these provisions, if binding and enforceable (a question we have no occasion to decide), the donees were to have the entire income of the property accruing during their lifetime and no one was to have a share of or interest in it. The absolute gift of all the income of property is a gift of the property itself. *Bristol* v. *Bristol*, 53 Conn. 242, 259, 5 Atl. 687.

The only alternative construction avoiding intestacy and having a measure of plausibility, is one which gives to Daniel and John life estates with remainders over to their heirs. This construction encounters very serious and seemingly insurmountable obstacles arising from the entire absence of language suggestive of an attempt to dispose of a remainder over, from the difficulty of finding in the language preceding the final phrase "to be to them their heirs forever," the gift of life estates leaving remainders over to be disposed of, and from the perplexities attending an effort to make that final phrase do duty as embodying a gift of such remainder to the heirs of Daniel and John. The testatrix apparently knew that a life estate left a remainder undisposed of, and how to make disposition of such remainder. Twice already had she dealt, and dealt not inaptly, with such situations. It would seem strange, therefore, that in this present instance she so far forgot as to leave no recognizable trace of an attempt to make a gift over.

The difficulties attending the construction which finds in the language preceding "to be to them," etc., the gift of a life estate sufficiently appears from the

discussion hereinbefore had. Those which are met in an effort to discover in the phrase last referred to— from which the word "and" manifestly was omitted by inadvertence—a gift to the heirs of Daniel and John, are manifold. They include wresting a common and familiar phrase from its accustomed meaning and use as words of limitation, to make them do an entirely novel duty for which as a matter of every-day English they were most inappropriate. The testatrix must have been not unfamiliar, at least in a general way, with the proper and ordinary use of this bit of legal phraseology. She had six times already resorted to it, and used it quite correctly and in such way as to indicate clearly that she was not so ignorant of its true significance and of the meaning of ordinary English as to imagine that it was a suitable phrase to use for the purpose of making a gift to a person's heirs taking as purchasers. There is also difficulty arising from the presence of the word "them." This must be eliminated or ignored, or some satisfactory excuse given for its presence. As the phrase stands, whatever gift is made to heirs is also made to the brothers for whom "them" stands.

John, having predeceased the testatrix, his sister, his issue took what he would have taken had he survived her. General Statutes, § 4945.

In view of the conclusions hereinbefore reached, the fourth question does not call for answer.

The Superior Court is advised to render judgment answering the first two of the questions propounded for advice in the negative and that the third be answered by adjudging that under the seventh paragraph of the will Daniel Woodruff took an absolute estate in one half of the two thirds of the remainder therein referred to and the issue of John Woodruff, to wit, Louise, Lily, Hamilton and Dudley Woodruff, the

other half of said two thirds in equal shares between them.

No costs in this court will be taxed in favor of any of the parties.

In this opinion the other judges concurred.