IN RE ESTATE OF FREDERICK F. BREWSTER
(2425)

HULL, BORDEN and SPALLONE, Js.

Argued June 12—decision released September 11, 1984

*Lawrence R. O'Brien,* pro se, the appellant (guardian ad litem), with whom, on the brief, was *Randi F. Mezzy.*

*H. Chandler Clark,* for the appellee (Colonial Bank, trustee).

HULL, J. This appeal[1] by the guardian ad litem for unborn and unascertained remaindermen under the will of the decedent, Frederick F. Brewster, is from a judgment of the trial court ordering the Hamden Probate Court to approve the trustee's account under that will for the 1980–81 trust year. The guardian ad litem alleges that the court erred by construing the will in a manner which allowed the trustee to pay the entire income of the trust in question to the beneficiary thereof during the 1980–81 trust year. We find no error.

The facts are not in dispute. The will of Frederick F. Brewster, duly probated in the district of Hamden, created several trusts, one of which was for the benefit of his granddaughter, Pamela Brewster Duffy (The Duffy Trust).

Pamela Duffy was born on May 24, 1956, and reached the age of twenty-one in 1977. The Duffy Trust was similar to eight other trusts created by the testator for each of his grandchildren. Each of the trusts provides, essentially, that from the date of the creation of the trust until the beneficiary of that trust reaches the age of twenty-one, the income may be used and expended by the trustee, at its discretion, for the support, maintenance, education and welfare of the beneficiary. After

---

[1] This appeal, originally filed in the Supreme Court, was transferred to this court. Public Acts, Spec. Sess., June, 1983, No. 83-29, § 2 (c).

the beneficiary's twenty-first birthday, the trustee is directed to pay to her one half of the annual trust income, and, upon the occurrence of the beneficiary's thirtieth birthday, the trust terminates and the corpus is to be transferred to her.[2]

On April 3, 1980, when Pamela Brewster Duffy was twenty-three years of age, she requested that the trustee pay her all of the net trust income under her trust so that she could pay off a demand note which she had made. The trustee paid over to her the trust income in the amount of $69,130.26 and, on October 23, 1981, it filed its annual account for the trust with the Hamden Probate Court.

---

[2] Article nine, part II of the will of Frederick F. Brewster, insofar as it is relevant, reads as follows:

"Part II. Two-thirds (2/3) thereof I give, devise and bequeath to the trustee hereafter named, upon trust, for the uses and purposes hereafter stated:

"(a) The trustee shall divide the properties constituting such two-thirds (2/3) part into as many equal shares as are necessary to provide one for each of my grandchildren then surviving. Each of such shares shall constitute a trust fund for and be designated with the name of one of such grandchildren. Each of the trust funds thus established shall continue until the grandchild for whom designated attains the age of thirty (30) years or dies, whichever event shall first occur, and thereupon such trust shall terminate.

"(b) The net income of each fund, in the discretion of the trustee, may be used and expended for the support, maintenance, education and welfare of the grandchild for whom designated, or it may be accumulated and from time to time added to the principal of the fund. If the trustee in its discretion pays such net income or a part thereof to the guardian of such grandchild or to the person with whom such grandchild is residing, it shall not be required to account further for the same. If a grandchild is twenty-one years of age or later attains that age, the trustee shall thereafter and until the termination of the trust pay one-half (1/2) of the net income of his or her fund, in quarterly installments, to such grandchild.

"(c) Upon termination of such a fund by reason of the grandchild for whom designated attaining the age of thirty (30) years, the principal thereof, including any additions thereto and any accumulated, unexpected or accrued income thereof, shall be conveyed, assigned, transferred and paid over to such grandchild, freed and discharged of all trust.

"(d) Upon termination of such a fund by the death of the grandchild for whom designated, the principal thereof, including any additions thereto and any accumulated, unexpended or accrued income thereof, shall be con-

After a hearing on this account, held as a result of the objection of the guardian ad litem for unborn and unascertained remaindermen, the Probate Court disallowed the account on the grounds that the distribution of the income to Duffy was contrary to the provisions of the will. The trustee appealed to the Superior Court and the matter was referred to a state referee for further hearings. The referee sustained the appeal and ordered the Probate Court to approve the trustee's account. From that order the guardian appeals, claiming error in the referee's construction of the will.

The focus of this appeal is whether the referee properly construed that portion of the will which delineates the powers and duties of the trustee over the portion of the trust income which is not paid to the beneficiary as a matter of right. While the terms of the trust are clear that one half of the annual trust income is to be paid to the beneficiary yearly, it is as to the other half of the income that a dispute arises. Clause (b) of part II of article nine of the will,[3] while it expressly modifies the obligation of the trustee to the benefici-

---

veyed, assigned, transferred and paid over to the person or persons appointed and in the amounts or proportions prescribed by such grandchild in exercising the power of appointment granted for the remainder of such fund in paragraph (e) hereof; or if such grandchild has not effectually or completely exercised such power, then such property as is not disposed of, shall be conveyed, assigned, transferred and paid over to the then suriviving issue of such grandchild, in equal shares, *per stirpes,* freed and discharged of all trusts; or, if there be no such surviving issue, then such property shall be divided into as many equal parts as are necessary to provide one part for each similar fund that then exists hereunder or that has terminated and has been distributed, and one of such parts shall then be conveyed, assigned, transferred and paid over to the trustee of each such fund then in effect to be added to the principal and follow the disposition thereof and to the person or persons to whom a fund has been distributed, or their executors or administrators, and in the same proportions as were used in such prior distribution."

[3] See footnote 2, supra.

ary once she reaches the age of twenty-one, does not expressly revoke the trustee's power to use and expend the trust income, at its discretion, for the support, maintenance, education and welfare of the beneficiary.

It is a long accepted canon of construction that "[w]ords . . . are not to be construed as importing a condition if they are fairly capable of a different construction." *Hershatter* v. *Colonial Trust Co.,* 136 Conn. 588, 594–95, 73 A.2d 97 (1950). Similarly, "an express and positive devise or bequest in fee cannot be cut down to an inferior estate by a subsequent clause in the will unless that is equally express and positive. *Fanning* v. *Main,* 77 Conn. 94, 99, 58 A. 472 [1904]; *Hull* v. *Hull,* 101 Conn. 481, 486, 126 A. 699 [1924]; *Peyton* v. *Wehrhane,* 125 Conn. 420, 426, 6 A.2d 313 [1939]." *Stanton* v. *Stanton,* 140 Conn. 504, 511, 101 A.2d 789 (1953); see also *Pond* v. *Porter,* 141 Conn. 56, 65, 104 A.2d 228 (1954).

With respect to the present will, we hold that, absent an express intent to the contrary, the modification of the trustee's duties which occurs when the beneficiary reaches the age of twenty-one should not be construed to terminate its discretion as to the expenditure of the remaining one half of the trust income for the benefit of the beneficiary.

This construction of the will is further supported by the rule that, if possible, effect is to be given to all parts of a will; *Hills* v. *Hart,* 136 Conn. 536, 543, 72 A.2d 807 (1950); and that the separate parts of a will are to be harmonized where possible. *Reaney* v. *Wall,* 134 Conn. 663, 667, 60 A.2d 505 (1948); *Cumming* v. *Pendleton,* 112 Conn. 569, 574, 153 A. 175 (1931). Here, the only way to give this entire provision of the will continuing application after the beneficiary of the trust attains the age of twenty-one is to interpret it to pro-

vide the trustee with continuing discretion over the half of the annual income not distributed as a matter of course.

In addition, in clause (d) of part II of article nine of the will, the intent of the testator on this issue is further demonstrated. That provision dictates that, upon reaching the age of thirty, the beneficiary is to receive the corpus of the trust and "any accumulated, unexpended or accrued income."[4] It is clear from this provision that the testator did not intend that a set sum would be accumulated at the termination of the trust. The testator's use of the word "unexpended" here suggests that he foresaw the situation in which there would be no unexpended income from the trust. It definitely suggests that the amount which might be left at the termination of the trust was very uncertain. Certainly, if the trustee's discretion ended when the beneficiary attained the age of twenty-one, it would be guaranteed that one half of the income for at least nine years would have accumulated. Yet, the testator did not intend or provide for this result, or he would have inserted the words "all income" or simply "the income" instead of "any income." See *Hartford-Connecticut Trust Co.* v. *Hartford Hospital,* 141 Conn. 163, 169, 104 A.2d 356 (1954); *New Haven Bank* v. *Hubinger,* 117 Conn. 417, 424, 167 A. 914 (1933). Rather, he conceived that during the nine years immediately prior to termination of the trust, some or all of that income might be distributed to the beneficiary.

Having determined that the trustee did have the discretion to disperse the remaining trust income, we cannot say that the trustee's disbursal of those funds was, in this case, an abuse of that discretion.[5] The terms

---

[4] See footnote 2, supra.

[5] The referee found that the request was discussed by Duffy and a trust officer of the trustee before the money was given out, but no memorandum of that discussion exists to evidence the scope of that discussion.

of the trust do not limit the trustee's discretion in any way, as would be the case, for example, had the words "if necessary" been used. See *Stempel* v. *Middletown Trust Co.,* 127 Conn. 206, 220, 15 A.2d 305 (1940). Rather, this was a gift which took into account Duffy's needs given her station in life; *Cromwell* v. *Converse,* 108 Conn. 412, 426–28, 143 A. 416 (1928); and did not require that her outside income be considered by the trustee in exercising its discretion. *Hoops* v. *Stephan,* 131 Conn. 138, 148, 38 A.2d 588 (1944). Rather, the standard use of the term "discretion" should prevail: "[T]he law is that the use of the word 'discretion' in a trust instrument, in relation to the powers of a trustee, is generally read by the courts to be coextensive with a duty to exercise discretion 'prudently.' " *Jackson* v. *Conland,* 178 Conn. 52, 65, 420 A.2d 898 (1979) (*Longo, J.,* concurring). We cannot say that this standard was not fulfilled in the present case.

Thus, we hold that the trustee had the discretion to authorize the payment of all of the trust income to Duffy, and that, in this case, that discretion was not abused.

There is no error.

In this opinion the other judges concurred.