## LOUIS H. BRISTOL, TRUSTEE, vs. THE ONTARIO ORPHAN ASYLUM AND OTHERS.

New Haven & Fairfield Cos., April T., 1891. ANDREWS, C. J., CARPENTER, LOOMIS, SEYMOUR and TORRANCE, Js.

A legacy was given to " The Canandaigua Orphan Asylum, at Canandaigua, Ontario County, New York." There was no orphan asylum of that name located at Canandaigua or elsewhere, but one named the Ontario Orphan Asylum was located there, and another named the St. Mary's Orphan Asylum. The testator's wife had a sister living at Geneva, in the same county, who was manager of the Ontario Orphan Asylum, and at her request he had visited the institution and had several times afterwards sent it money, and it was generally spoken of in Geneva and by her as the Canandaigua Orphan Asylum. The testator had spent two years in the latter part of his life and before the will was drawn in Geneva. The court below found that this asylum was the one intended by the testator. Held—

1. That the legacy was not void for uncertainty.
2. That the above facts could be shown by parol evidence.
3. That the finding of the court below was one of fact that could not be reviewed by this court.
4. That if it could be reviewed, the court below seemed to be right in its conclusion.

[Argued April 21st—decided May 25th, 1891.]

SUIT for the construction of a will, brought by the plaintiff as a trustee under it, to the Superior Court in New Haven County, and reserved on facts found for the advice of this court. The case is fully stated in the opinion.

*S. E. Baldwin* and *T. E. Russell*, for the Ontario Orphan Asylum.

*S. Tweedy*, for the heirs at law.

TORRANCE, J. The plaintiff is administrator with the will annexed of the estate of James Glynn deceased and also trustee under the will. After the payment of debts and legacies there remains in his hands, as residuary estate

applicable to the purposes of the trusts created by the will, a fund of about eighty thousand dollars, consisting wholly of personal property. The testator lived at New Haven, and was a citizen of New Haven when he made his will and when he died.

The will contains, among others, the following provisions:—
" After the payment of my just debts and funeral expenses, I give and bequeath to my namesake, James Glynn Gregory, of Norwalk, Connecticut, the sum of five thousand dollars. All the rest, residue and remainder of my estate of every kind and description, both real and personal, to which I shall be entitled at the time of my decease, I give, devise and bequeath to my executors hereinafter named, in trust—

" First, to pay over the rents, income and profits thereof to my dearly beloved wife, Sarah Glynn, for and during the term of her natural life.

" Second, upon her decease, to pay out of said rents, income and profits, the sum of five hundred dollars per annum to my wife's sisters, Elizabeth P. Stoddard and Anne Stoddard, both of Geneva, New York, if they or either of them shall then be living, for the term of their natural lives and the life of the survivor of them.

" Third, to pay the balance of said rents, income and profits, after deducting said sum of five hundred dollars, to the Canandaigua Orphan Asylum, at Canandaigua, Ontario County, New York, during the life-time of the said Elizabeth and Anne, and the survivor of them ; then to convey, transfer and pay over the whole of the said rest and residue of my estate to said Orphan Asylum.

" If the said Orphan Asylum is not incorporated, the income and estate which is by this will given to said Orphan Asylum shall be paid, conveyed and transferred in fee simple and forever to the person who, when the income or estate is to be paid, conveyed or transferred, shall be acting as treasurer of said Orphan Asylum, to be appropriated to its charitable uses and purposes and under its direction."

The widow of the testator died in the year 1890. The sisters of the widow, Elizabeth and Anne, are still living. The

testator at the time of his decease left a sister, who is now living in France ; also certain nephews and nieces, children of a deceased sister.

At the testator's death there was not, and has not been since that time, nor is there now, any Orphan Asylum located at Canandaigua bearing the corporate name or title of the Canandaigua Orphan Asylum, nor any corporation, organization or association in existence bearing such name or title. One of the defendants, the Ontario Orphan Asylum, is a corporation, organized under the laws of the state of New York in 1863, and is located at the town of Canandaigua aforesaid, where it has an asylum for the protection, relief and education of orphan and destitute children in the county of Ontario. Another defendant, the St. Mary's Orphan Asylum and Academy, is also a corporation, organized under the laws of New York in 1855, and is located in said Canandaigua, where it has an asylum for the protection, relief and education of orphan and destitute children.

The trustee asks the advice of the Superior Court whether either of said two last named corporations, and if so, which, is entitled to take that portion of the income and principal of said trust fund which by the terms of the will is made payable to the Canandaigua Orphan Asylum. Also whether the provision in the will in favor of the Canandaigua Orphan Asylum is or is not void for uncertainty and indefiniteness. In the event of the gift being declared void, he asks the advice of the court upon the question to whom and in what manner the income and principal of the trust fund shall be paid.

All the persons and corporations interested have been made parties. In addition to the foregoing facts, the Superior Court finds, from certain parol evidence, the following facts :—In 1865 the testator married a Miss Stoddard of Geneva, New York. She had a sister who was manager of the Ontario Orphan Asylum aforesaid, who lived at Geneva, which is twenty-three miles by rail from Canandaigua. Both towns are in Ontario County. This sister asked the testator to contribute to the asylum in Canandaigua, and he gave to

her for it five dollars in 1866 and five dollars more in 1867. In the winter of 1867 and 1868 he visited the asylum with her, was pleased with its management, and gave it one hundred dollars, by his check payable to the Ontario Orphan Asylum. In 1868 he gave it one hundred dollars more, but whether by check or not did not appear. In 1867 and 1868 he spent most of his time with his wife and sisters at Geneva. At that time the asylum was commonly called at Geneva the Canandaigua Orphan Asylum, or the Orphan Asylum at Canandaigua, generally the former; and his sisters spoke of it in that way and never by the name of the Ontario Orphan Asylum. This asylum is under Protestant management. The St. Mary's Orphan Asylum and Academy is under Catholic management.

The testator was of Roman Catholic parentage, and was in his early youth brought up in that faith, but he was strongly opposed to the Roman Catholic church, and it did not appear that he had ever heard of this Catholic asylum. He was married in the Protestant Episcopal church, and attended its services occasionally, and whenever he went to church went there. He was a person of no decided religious views. His will was substantially prepared several weeks before it was executed, and a blank was left for the name of the orphan asylum which was to be the residuary legatee, that the testator might learn its corporate name. At the date of the execution of the will he directed to be inserted the name of the Canandaigua Orphan Asylum, saying that was the correct name.

These facts were found upon parol evidence, to the admission of all of which objection was made by the heirs at law. From these facts the court found, as a fact, that by the name " Canandaigua Orphan Asylum," the testator meant to designate the Ontario Orphan Asylum. The case is reserved for the advice of this court.

One of the important questions in the case is, whether the parol evidence was admissible. Whatever doubt there may be as to the corporation or orphan asylum intended by the testator, arises not from the words used in the will, but

from the fact that evidence outside of the will shows that there are two corporations in Canandaigua whose objects and character are correctly described by the words "Canandaigua Orphan Asylum," considered as words of description merely. Inasmuch as there is no corporation, association, society or organization of any kind in existence, whose corporate or real name is that of the "Canandaigua Orphan Asylum," we must regard the name used in the will as a designation of the object of the testator's bounty by description and not by name.

"A devise is never to be construed absolutely void for uncertainty but from necessity; if it be possible to reduce it to a certainty the devise is to be sustained. *Ut res magis valeat quam pereat.*" Powell on Devises, 421.

"There is no rule applicable to devises which requires the name of the devisee to be mentioned; it is only necessary that the description of the devisee be by words that are sufficient to denote the person meant by the testator and to distinguish him from all others. * * * And indeed it is true of much the greater proportion of devises, that the objects of them are designated by description rather than by name. * * * And no substantial reason is perceived why such a description is not as available in the case of a corporation as of a natural person. It is sufficient in both cases if the intention of the testator can be discovered by the language he uses, in connection with such evidence as is proper for the purpose of applying it." *Brewster* v. *McCall's Devisees*, 15 Conn., 292.

The evidence outside of the will in the case at bar thus showing that there are two corporations in Canandaigua which answer the description of the "Canandaigua Orphan Asylum," and which were in existence when the will was executed, it becomes necessary to ascertain which of them was intended by the testator. "That parol evidence is admissible for this purpose does not admit of doubt. It is the case of a latent ambiguity raised by the parol evidence, which discloses the fact that there are several such societies, and which therefore may be removed by the same species of evi-

dence ; for it is a familiar rule that a latent ambiguity, that is, an ambiguity arising from extrinsic evidence, may be removed by extrinsic evidence." *Brewster* v. *McCall's Devisees*, 15 Conn., 293. See also *Ayres* v. *Weed*, 16 Conn., 291 ; *Am. Bible Society* v. *Wetmore*, 17 id., 181.

" Where the name used does not designate with precision any corporation, but when the circumstances come to be proved so many of them concur to indicate that a particular one was intended, and no similar conclusive circumstances appear to distinguish and identify any other, the one thus shown to be intended will take." *Dunham* v. *Averill*, 45 Conn., 86. See also *King* v. *Grant*, 55 Conn., 166. The evidence objected to was thus clearly admissible for the purposes for which it was offered.

Upon that evidence the court has found as a fact, that by the words " Canandaigua Orphan Asylum" the testator meant to designate the Ontario Orphan Asylum located at Canandaigua. Under the circumstances we must regard this finding as one of fact which this court will not review. If however we could review it, we should probably on the same evidence come to the same conclusion.

We therefore advise the Superior Court as follows :—

1. The Ontario Orphan Asylum is entitled to that portion of the income and principal of said trust fund which is made payable to the Canandaigua Orphan Asylum.

2. The St. Mary's Orphan Asylum and Academy is not entitled to anything under the will.

3. The provision in the will in favor of the Canandaigua Orphan Asylum, whereby a portion of the income and the whole of the principal of the trust fund are given to it, is not void for uncertainty and indefiniteness.

In this opinion the other judges concurred.