[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: MOTION FOR SUMMARY JUDGMENT (#101)
The plaintiff, Frank B. Rogers, Jr., Executor of the Estate of Florence W. Rogers brought this action against the defendants, Frank B. Rogers, Jr., individually and Lance Duane Rogers, son of the decedent requesting the construction of paragraph A of Article Seventh of Florence Rogers' will dated February 12, 1986.
Mrs. Rogers died on March 2, 1990 a resident of the Town of Sherman, Connecticut, leaving a will dated February 12, 1986 which was admitted to probate by the probate court for the district of Sherman by decree dated March 27, 1990 by which her husband, Frank B. Rogers, Jr., was appointed as executor. Paragraph A of Article Seventh of Mrs. Rogers' will states in its entirety as follows:
 A. If I am survived by my said husband, FRANK B. ROGERS, JR., for a period of thirty (30) days, I give and bequeath to my said husband an amount equal to one-half (1/2) of the value of my taxable estate as finally determined in the Federal estate tax proceedings in my estate (line 3 in Form 706). I authorize my Executors in their sole and uncontrolled discretion to satisfy this bequest entirely in cash or entirely in kind, or partially in cash and partially in kind, and without any requirement for diversification. In making the computations necessary to determine the amount of this bequest the final determination in the Federal estate tax proceedings shall control. In the event that any assets other than money shall be used to satisfy this bequest, such assets shall be valued for such purpose at their fair market value as of the date of distribution.
Mrs. Rogers was the owner at her death of valuable real property located in Sherman, Connecticut and extensive timber interests in the State of Maine, as well as valuable personal property, both tangible and intangible. Her estate is estimated to exceed $5,000,000. The plaintiff executor has been advised by counsel that Paragraph A of Article Seventh of Mrs. Rogers' will is ambiguous and that he as executor cannot, with safety to himself or to the rights and interests of others, carry out his duties as executor and make distribution CT Page 1534 of the estate without the advice of this court as to the construction of Paragraph A of Article Seventh of the will.
The plaintiff has filed a motion for summary judgment claiming that there is no issue as to any material fact attacking a petition for construction of the will, and affidavits of Attorney Stuyvesant K. Bearns, Attorney Paul L. Cornell, Jr. and Frank B. Rogers. The answers on file admit the allegations of the complaint, and both defendants request the court to determine the construction of paragraph A of Article Seventh of the will of Florence W. Rogers.
Florence W. Rogers left a will dated February 12, 1986 containing a "marital deduction formula bequest," Paragraph A, Article Seventh which is the produce of an inadvertent drafting error. If it is read strictly, literally, it is meaningless. This provisions was drafted by her attorney in an attempt to replace a prior, unambiguous marital deduction formula bequest in her 1984 will with new wording meant to produce the same result as the prior one. Mrs. Rogers never instructed any change in this provision between the prior will and the last will, nor was it ever suggested to her that any change had been made in the effect of this clause. Further relevant facts are set forth in the affidavits of Stuyvesant K. Bearns, special counsel to the executor, Paul Lincoln Cornell, Mrs. Rogers' attorney and draftsman, and Frank B. Rogers, Jr., her husband.
As pointed out in the affidavits submitted herewith, Paragraph A of Article Seventh of the will of Florence W. Rogers is, if read literally, self defeating. The bequest cannot be calculated. One need not labor the argument that Mrs. Rogers did not intend such a result.
Connecticut law establishes certain principles of construction that lead from a literal, self-destructive reading of Mrs. Rogers' will to the more desirable goal of determining and carrying out her intent. Intent is the "pole star" of will construction. Bridgeport City Trust Co. v. Shaw,115 Conn. 269, 272 (1932). To find and effectuate that intent is the "cardinal rule" of will construction. Swole v. Burnham,111 Conn. 120, 121-122 (1930). It is to be presumed that a testator did not make provision for a gift which in no event could become operative. Budington v. Houck, 134 Conn. 72, 76
(1947). If two constructions are possible, one of which would render a provision void and inoperative, the other effective, the court will choose the latter. Daskam v. Lockwood,103 Conn. 54, 60 (1925). "While there is a presumption that the testator used language in its usual and legal sense, this presumption will be overthrown when an examination of the CT Page 1535 instrument, in the light of the surrounding circumstances, clearly shows that the intent of the testator will not be effectuated by so interpreting it, and that the language was used in another sense. In such a case, that meaning will be attached to the language which the testator attached to it when he used it." Wolfe v. Hathaway, 81 Conn. 181, 185 (1908). (emphasis added) "Words of an inartificially drawn will may thus have a meaning given to them which they do not ordinarily or property possess." Ibid.
Where a given provision of a will fails because of an obvious mistake, courts will search for the true intent and carry out that intent by giving the defective provision a different meaning than a literal reading of the words alone would produce. Sadler v. Sadler, 107 Conn. 409 (1928) is such a decision. In Sadler, the testatrix inherited a parcel of land from her husband. Twenty nine years later she signed a will devising "any real estate now standing the name of my deceased husband. . ." to certain grandchildren, leaving the residue of her estate to her children. At the time of the testatrix' death, none of the real estate which had passed to her from her husband's estate, was still "standing in" his name, and his estate had long been settled and fully distributed. In a contest between the children and the grandchildren, the court held that the real property passed to the grandchildren under the specific, though clearly defective, devise. The court was satisfied that the testatrix intended to pass the real estate in question to the grandchildren, and was unwilling to allow a drafting error in her will to defeat that intent.
As the court pointed out, at page 415: "If this construction be not adopted, the attempted gift to these grandchildren must fail and the whole paragraph become ineffective. It is a sound rule of construction that a bequest must be upheld if legally possible. . . .An obvious mistake made by the testator. . . has never been permitted to defeat the intent when it is ascertained." Emphasis added.
In a case of obvious error such as the one here presented, the court may search for the testatrix' intent beyond the defective will provision. It may look to objective, ascertainable facts which place the testatrix in the actual "context" in which she signed her will. First New Haven National Bank v. First New Haven National Bank, 153 Conn. 490, 496 (1966); Hoops v. Stephan, 131 Conn. 138, 143 (1944); Steele v. Leete,27 Conn. Sup. 474 (1968). Following this rule, the Connecticut Supreme Court has upheld the admission of a letter written by the testatrix where the will description of a bequest was ambiguous ("my net estate"), Cornell v. Cornell, 165 Conn. 376
(1973), and the appellate court has allowed testimony CT Page 1536 of the draftsman to be admitted to identify the intended legatee where the named legatee was nonexistent, Shulman v. Connecticut Bank Trust Company, 5 Conn. App. 561 (1985). While no Connecticut case has been located which deals with the admission in evidence of prior will as an aid to construction, courts in New York and Massachusetts have approved their use as evidence of the testator's intent. Matter of Frederick,246 N.Y. Supp.2d 320, 323 (Surr. Ct, N.Y. County 1964); Upham v. Siskind, 16 Mass. App. 588, 453 N.E.2d 1065 (1983).
In this case, there is objective, verifiable evidence available to determine Mrs. Rogers' intent. Her prior, 1984, will contains a similar "marital deduction formula bequest " which is clear and unambiguous: "one half (1/2) of the value of my adjusted gross estate as finally determined in the federal estate tax proceedings in my estate." By using the phrase "adjusted gross estate", Mrs. Rogers' 1984 will made direct reference to the Internal Revenue Code, under the authority to incorporate by reference contained in Connecticut General Statutes Section 45-174. This phrase, "adjusted gross estate", is defined by Section 2056(c) of the Internal Revenue Code, as it was in effect prior to amendment of this portion of the Code by the Economic Recovery Tax Act of 1981, to mean the gross estate less debts of the decedent chargeable to the estate and the costs (other than death taxes) of settling the estate. The phrase is clearly defined, unambiguous and "hallowed" by use in thousands and thousands of wills. It was, for close to thirty years, the standard language of a formula marital deduction clause. See, e.g. Tweed Parsons, Lifetime and Testamentary Estate Planning, 94 (1966.)
As the affidavits of the draftsman and her husband disclose, she did not direct any change from the 1984 provision when her 1986 will was written. The 1984 provision was "one-half (1/2) of the value of my adjusted gross estate. . .", a phrase of clear and unambiguous meaning which she can legally be presumed to have understood. The 1986 provision is "one-half (1/2) of the value of my taxable estate as finally determined in the federal estate tax proceedings in my estate", a phrase which, taken literally, is meaningless.
The inquiry then must become this: "What did Florence W. Rogers mean by the phase used in the 1986 will?" With the objective fact of the prior will and its unambiguous wording, and the testimony of her husband and her draftsman available to demonstrate that she never directed any change in this particular provision, there is no need for conjecture, no cause for speculation. It can be seen that to her the two phrases meant the same thing. CT Page 1537
Mrs. Rogers was not trained in federal estate tax law or in the technical wording of modern, tax driven wills. Like the testatrix in Sadler, "(w)e would not be warranted in ascribing to her the knowledge. . .which we would ascribe to a trained lawyer." Nor must her lack of such knowledge and an inadvertent error by her draftsman be allowed to defeat her intent, and significantly disinherit her husband. As our supreme court stated in Sadler at page 414: "Reason and common sense are not to be excluded from consideration in ascertaining the intent of a testatrix under these circumstances."
For the reasons set forth the motion for summary judgment is granted and Paragraph A of Article Seventh of the will of Florence W. Rogers is construed to bequeath to her husband an amount equal to one-half of her "adjusted gross estate" as defined by Section 2056(c) of the Internal Revenue Code prior to its amendment by the Economic Recovery Tax Act of 1981.
Judgment may enter accordingly.
PICKETT, J.